UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――

UNITED STATES OF AMERICA

        v.

DANIEL RODRIGUEZ,

                      Defendant.

**DECISION AND ORDER**

12-CR-83S

―――――――――――――――――――――――

## I. INTRODUCTION AND BACKGROUND

What should this Court do to manage the emerging issue of remote detention? Pretrial defendants who are ordered detained are winding up housed 100, 200, or even 400-plus miles from the courthouse in downtown Buffalo, New York. Remote detention is happening partly because of the Court's growing caseload and partly because the Western District of New York lacks a federal pretrial detention facility. In the specific instance of defendant Daniel Rodriguez ("Rodriguez"), remote detention is happening also because Rodriguez has been expelled from at least one nearby jail, the Niagara County Jail.[1] Whatever the reasons why remote detention is happening, it is affecting defense attorneys' ability to meet with their clients compared to visiting them downtown or in a neighboring county.

---

[1] The Court noted in its last decision that it disregarded certain information about incident reports because of a lack of specifics. (*See* Dkt. No. 147, 2014 WL 4094561, at *8 n.3.) The parties unfortunately have not provided more information about the incident reports, but the Court takes judicial notice that, whatever the reason, Rodriguez was expelled from the Niagara County Jail.

What should the Court do?  In this Decision and Order, the Court will try again to answer that question in response to Rodriguez's latest bail motion.

On June 25, 2014, Rodriguez filed a bail motion (Dkt. No. 135) asking for a declaration that his detention at the Northern Regional Jail in Warsaw, Virginia, approximately 483 miles by road from downtown Buffalo, violated his Sixth Amendment right to effective assistance of counsel.  In a Decision and Order issued on August 18, 2014, the Court resolved Rodriguez's motion on statutory grounds, under 18 U.S.C. § 3142(i)(3).  (Dkt. No. 147, *available at* 2014 WL 4094561.)  Section 3142(i)(3) mandates that any defendant ordered detained "be afforded reasonable opportunity for private consultation with counsel."  The Court discussed several factors that would affect whether Rodriguez indeed had a reasonable opportunity for private consultation with his counsel.  Applying those factors, the Court decided that it needed more information about the circumstances of Rodriguez's remote detention before it could determine whether the Government had been complying with Section 3142(i)(3).  The Court denied Rodriguez's motion, but without prejudice to renew it after 60 days with a more developed record.

Rodriguez filed a new motion—the pending motion—on February 12, 2015.  (Dkt. No. 172.)  Rodriguez again seeks an order directing the United States Marshals Service ("USMS") to transfer him to a local jail.  Rodriguez does

2

not cite the Court's prior decision and does not cite Section 3142(i)(3). Rodriguez does not cite his prior expulsion from the Niagara County Jail. Rodriguez also acknowledges that the Government now is housing him at the Steuben County Jail, a state detention facility within the geographical boundaries of the District and about 105 miles from downtown Buffalo.  Nonetheless, Rodriguez returns to the constitutional arguments that he raised in his first motion.  Specifically, Rodriguez contends that "his participation in discovery review and further motion practice has been wholly curtailed." (Dkt. No. 173 at 3.)  Rodriguez's counsel would have to spend about four hours round-trip to visit him, a time commitment that "has created an immediate violation of his Sixth Amendment right to the effective assistance of counsel."  (*Id.* at 4.)  Rodriguez concludes that he needs housing in "a local jail closer to his attorneys and the court in Buffalo, New York to ensure adequate accessibility in the critical stages of preparation for trial." (*Id.*)  Rodriguez feels some urgency in renewing his motion for relocation because the Government filed a superseding indictment on December 12, 2014.  (Dkt. No. 155.)  All parties in the case have stated that they already have all discovery pertaining to the new indictment.  Still, the superseding indictment expanded the case from one Hobbs Act conspiracy among three defendants to two Hobbs Act conspiracies involving five

defendants, with kidnapping and murder-related gun counts included.  Motions addressing the superseding indictment currently are due on April 1, 2015.

The Government opposes Rodriguez's motion as too categorical. Rodriguez has been housed at the Steuben County Jail since July 23, 2014. Rodriguez's counsel[2] last visited him on June 6, 2013, when he still was housed at the Niagara County Jail.  Counsel thus have not visited Rodriguez for almost two years, and the Government complains that the lack of diligence in not visiting Rodriguez undermines the pending motion.  The Government emphasizes that Steuben County Jail has the capability for pre-arranged, private telephone calls and delivery of documents by United States Postal Service or private carrier. The Government also notes that Rodriguez has an extensive criminal history and history of misconduct while in custody.  The parties have not provided details of this misconduct, but the United States Probation Office ("USPO") advised the Court at the last bail review hearing that Rodriguez assaulted a Steuben County corrections officer as recently as a few weeks ago.  The Government urges the Court not to ignore all of this context, or else it will create a *per se* rule against remote detention based on distance alone.  A *per se* rule, according to the Government, would infringe on the Department of Justice's authority to manage the housing of defendants ordered detained.  Such a rule also would reward

---

[2] From the beginning of the case, Rodriguez has had two attorneys assigned to him because, until very recently (*see* note 4 *infra*), this case was "death-penalty eligible."

4

Rodriguez for getting himself expelled from the kind of nearby facility that he now seeks.

The Court held a bail review hearing on March 4, 2015. For the reasons below, the Court grants Rodriguez's motion in part to permit limited transport to the courthouse in connection with major proceedings that will occur in the case. The Court denies the motion in all other respects.

## II. DISCUSSION

### A. Applying Section 3142(i)(3)

As it did in its prior decision, the Court will assess Rodriguez's motion on statutory grounds rather than constitutional grounds. "The Sixth Amendment sets minimum standards for attorney conduct and strategy that potentially affects the outcome of a case. Section 3142(i)(3) reaches above minimum conduct affecting case outcomes and suggests how an attorney-client relationship ought to proceed leading up to trial—it assumes that the attorney and client will consult each other regularly and then mandates the removal of any impediment to 'private' consultations that are qualitatively and quantitatively 'reasonable.' Consequently, compliance with Section 3142(i)(3) virtually guarantees compliance with the Sixth Amendment, so long as an adequately skilled attorney works in good faith to stay in touch with a client and to solicit the client's input regarding trial strategy." Dkt. No. 147, 2014 WL 4094561, at *4; *see also Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995) ("Section 3142(i)(3) is

designed to protect a defendant's Sixth Amendment right to counsel, and if that right is being infringed, [the Court] has the statutory authority to protect [defendant's] access to counsel."). Under Section 3142(i)(3), a "reasonable opportunity" for consultation with counsel "would have to allow defendants to review discovery that the Government intends to introduce at trial and to plan non-frivolous motions and other strategies. The opportunity would account for defendants' criminal histories, behavior reports, medical conditions, and similar logistical problems that have a direct impact on setting up attorney-client meetings. Finally, the opportunity would not unnecessarily create different tiers of attorney-client relationships. Any logistical problem that raises the barrier to attorney-client communication will, over time, make a relationship with that problem different than a relationship without it. An opportunity for consultation may nonetheless be reasonable if a fair consideration of all circumstances requires an alteration in the attorney-client relationship that is proportional to the severity of the logistical problem." Dkt. No. 147, 2014 WL 4094561, at *6 (citations omitted). Consultation with counsel under Section 3142(i)(3) also must be "private." "Whether in person, by mail, by telephone, or through a video conference, a 'private consultation with counsel' consists of a communication between only a defendant and the defendant's attorney of record that preserves ethical obligations of confidentiality and carries no risk of a waiver of attorney-

6

client privilege.  Such a consultation also would comply with all applicable regulations governing the management of pretrial detainees." *Id.* at *8.

In trying to apply the above principles, the Court still lacks details about facility policies and practices, and about Rodriguez's behavior reports and communications with counsel.  The new information that the Court has acquired, however, does not make it any more inclined to grant bail or to intervene in the daily management of Rodriguez's detention.  As noted above, the USPO has reported that Rodriguez assaulted a corrections officer recently at the Steuben County Jail.  Whatever the details, Rodriguez has not disputed that something happened, and any sort of assault is an example of the sort of logistical problem that warrants a reasonable imposition on an attorney-client relationship.  The Court also learned through the motion papers and at the bail review hearing that Rodriguez's counsel have not visited him since June 6, 2013.  The Court learned further that counsel do not use telephone conferences, for fear that the facility records them, and appear to make limited use of mail deliveries.  The Court does not necessarily disagree with two[3] distinguished attorneys about the inconvenience of visiting Rodriguez in Steuben County, though it does lie within the District.  The entire trip likely takes most of a day, between the drive there, any meeting itself, and the drive back.  Setting up telephone or video

---

[3] On March 5, 2015, the Government filed a motion to remove Rodriguez's learned counsel, now that the Department of Justice has issued a definitive decision not to seek the death penalty.  (Dkt. No. 179.)  That motion will be addressed separately.

7

conferences and arranging mailings of discovery take extra time and advance planning. "The Court regrets that this arrangement will require more work for defense counsel, but the standard imposed by the statute is one of necessity, not convenience." *U.S. v. Bolze*, No. 3:09-CR-93, 2010 WL 199978, at *2 (E.D. Tenn. Jan. 13, 2010); *see also U.S. v. Acevedo-Ramos*, 600 F. Supp. 501, 507 (D.P.R. 1984) (rejecting an assertion that pretrial detention interferes with pretrial preparation where "defendant, by counsel's own admission, has been able to consult with his attorneys"). The District's Criminal Justice Act ("CJA") administrative procedures allow counsel to receive compensation for travel time to and from detention facilities. With respect to telephone conferences, detention facilities simply are not permitted to compromise attorney-client confidentiality. At a minimum, protecting confidentiality means that any recordings of attorney-client telephone and video conferences, if they must be made at all, are permitted for internal security purposes only and must never be disclosed or used for any other purpose without further order of the Court. *See* 28 C.F.R. § 540.102 ("Staff may not monitor an inmate's properly placed call to an attorney. The Warden shall notify an inmate of the proper procedures to have an unmonitored telephone conversation with an attorney."); *U.S. v. Janis*, 820 F. Supp. 512, 517–18 (S.D. Cal. 1992) ("In order to effectively represent himself, Janis must also be able to communicate confidentially with his investigator. The

court orders that the [jail] allow Janis to conduct private, in-person consultations with his attorneys in all pending litigation and with the court appointed investigator working on the criminal case pending in this district. The [jail] is further ordered not to disclose the contents of any taped or recorded telephone conversation between Janis and his attorneys, investigators or witnesses without further order of the court. The [jail] may disclose the conversations internally, only if necessary, for security of the institution."). The Court invites counsel to apply as needed for orders directing the protection of confidentiality for specific telephone or video conferences that they may schedule.

Between mailings and telephone or video conferences for lesser communications, and counsel's jail visits for more important communications, Rodriguez will receive a reasonable opportunity for private consultation with counsel. To declare otherwise would risk rewarding Rodriguez for behavioral problems that exhausted his options at closer facilities. Declaring otherwise comes too close to enacting a rule that distance alone, without any context, can establish a statutory violation. The Court will not enact such a rule. Under these circumstances, the Court finds no violation of Section 3142(i)(3) and no need to disturb Rodriguez's current housing arrangement.

### *B. Transports Under Section 3142(i)(4)*

Although the Court finds no violation of Section 3142(i)(3), it has one more issue to consider that could provide defense counsel some help in preparing for trial. Under 18 U.S.C. § 3142(i)(4), judges who order defendants detained must "direct that, on order of a court of the United States . . . , the person in charge of the corrections facility in which the person is confined deliver the person to a United States marshal for the purpose of an appearance in connection with a court proceeding." 18 U.S.C. § 3142(i)(4). Section 3142(i)(4) differs from the end provision of Section 3142, which allows temporary relief "to the extent that the judicial officer determined such release to be necessary for preparation of the person's defense or for another compelling reason." The Court rejected the possibility of temporary release given two previous rulings granting detention. Dkt. No. 147, 2014 WL 4094561, at *9 n.4; *see also U.S.v. Jeffries*, No. 3:10-CR-100, 2011 WL 182867, at *4 (E.D. Tenn. Jan. 20, 2011) ("The Court finds that there appear to be means short of release that would permit defense counsel to access and review the Defendant's Facebook account, such as traveling to Clarksville to use the Defendant's password on his home computer or, potentially, bringing a laptop computer to the facility where the Defendant is detained. The Court has found that the Defendant must be detained [Docs. 27 and 47] because he is a danger to the community."). Section 3142(i)(4) is different, though; by giving the Court authority to direct delivery of defendants, it

10

potentially threads the needle of managing defendant transport without managing defendant housing. This distinction is important. The Court has limited authority to direct the daily management of detention facilities. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security . . . . But judicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial.") (citations omitted). The Court has extensive authority to direct the USMS to execute orders, including transport orders, that stay within the scope of the agency's mission. *See* 28 U.S.C. § 566(a) ("It is the primary role and mission of the United States Marshals Service to provide for the security and to obey, execute, and enforce all orders of the United States District Courts . . . , as provided by law."). The Court usually directs the transport of defendants when they need to appear in the courtroom and on the record. Can Section 3142(i)(4) allow transport of defendants to the courthouse on days when they will not appear in the courtroom but when an in-court proceeding is imminent? If so then defense counsel may

11

have an opportunity to see Rodriguez in the courthouse and not just at a detention facility.

Whether Section 3142(i)(4) allows for pre-proceeding transport depends on the exact meaning of the phrase, "appearance in connection with a court proceeding." The Court cannot find any commentary or legislative history concerning this phrase, but a review of basic principles of statutory interpretation will help. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (citations omitted). "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks and citations omitted). "Congress will be presumed to have used a word in its usual and well-settled sense." *U.S. v. Stewart*, 311 U.S. 60, 63, 61 S. Ct. 102, 105, 85 L. Ed. 40 (1940). "When interpreting a statute, we examine related provisions in other parts of the U.S. Code." *Boumediene v. Bush*, 553 U.S. 723, 776 (2008) (citations omitted).

The Court will begin by breaking up the phrase and assessing the term "appearance" by itself. Does "appearance" refer only to the courtroom? The

American Heritage Dictionary defines "appearance" as "[t]he act or an instance of coming into sight or public view." Am. Heritage Dictionary (5th ed. 2011), *available at* https://www.ahdictionary.com/word/search.html?q=appearance&submit.x=16&submit.y=22 (last visited Mar. 12, 2015). Black's Law Dictionary defines "appearance" as follows: "A coming into court as a party or interested person, or as a lawyer on behalf of a party or interested person; esp., a defendant's act of taking part in a lawsuit, whether by formally participating in it or by an answer, demurrer, or motion, or by taking postjudgment steps in the lawsuit in either the trial court or an appellate court." *Black's Law Dictionary* (10th ed. 2014), *available in* Westlaw (search for "appearance"); *cf. Priestley v. Astrue*, 651 F.3d 410, 432 (4th Cir. 2011) (using Black's Law dictionary to define "appearance"); *In re Poconos Land, LLC*, 343 B.R. 108, 111 n.2 (Bankr. M.D. Pa. 2005) (same). Other uses of the term "appearance" refer to a submission to court jurisdiction. *See* 4 Am. Jur. 2d *Appearance* § 1 (Westlaw 2015) ("An 'appearance' in an action involves some submission or presentation to the court by which a party shows his intention to submit himself or herself to the jurisdiction of the court.") (citation omitted). Submission to jurisdiction is not an important consideration here, since Rodriguez is being held based in part on an involuntary determination of probable cause. The reference to jurisdiction nonetheless is important because it indicates possible meanings of the term "appearance" that

13

are not limited to the courtroom. The definitions pertaining to physically coming to court also do not limit themselves to the courtroom. Rodriguez can come into sight in the courthouse, or can come into court as a party, without having to say or to do anything on the record. If Rodriguez comes to court to meet with counsel to prepare for something that will occur in the courtroom and on the record then there is little reason to deny that he has "appeared" for his case. When any litigants or attorneys come to the Clerk's Office to file papers or to request copies of papers, they also have come to court and thus "appeared." When attorneys answer complaints in civil cases or file notices of appearance in any cases, they are literally or figuratively coming to court to assert rights for themselves or their clients. From what the Court can gather, the term "appearance" by itself thus means little more than "showing up." Attorneys and clients can show up for court literally by walking through the courthouse doors, or can show up figuratively by filing papers announcing their participation in a case. Rodriguez's situation is no different: Any time he shows up in the courthouse by transport, he has made an "appearance."

Of course, while simply showing up may account for 80% of success in life,[4] it accounts for only half of the Court's inquiry here. The word "appearance" does not occur by itself in Section 3142(i)(4). The word occurs as part of the

---

[4] "Eighty percent of success is showing up." Attributed to Woody Allen, *available at* http://www.brainyquote.com/quotes/quotes/w/woodyallen145883.html (last visited March 12, 2015).

phrase, "appearance in connection with a court proceeding."  The term "court proceeding" has a fairly unambiguous relation to the Court's calendar, but what does "in connection with" mean?  Case law indicates that the phrases "in connection with" and "relating to" are effectively identical and refer to some kind of relationship that need not be causal.  "The term 'related to' is typically defined more broadly and is not necessarily tied to the concept of a causal connection.  Webster's Dictionary defines 'related' simply as 'connected by reason of an established or discoverable relation.'  The word 'relation,' in turn, as used especially in the phrase 'in relation to,' is defined as a 'connection' to or a 'reference' to.  Courts have similarly described the term 'relating to' as equivalent to the phrases 'in connection with' and 'associated with,' and synonymous with the phrases 'with respect to,' and 'with reference to,' and have held such phrases to be broader in scope than the term 'arising out of.'"  *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001) (editorial and internal quotation marks and citations omitted); *accord Rosehoff Ltd. v. Cataclean Americas LLC*, No. 12-CV-1143A, 2013 WL 2389725, at *8 (W.D.N.Y. May 30, 2013) (Arcara, *J.*) (citing *Coregis*).  Interpreting "in connection with" broadly as "having something to do with" is consistent with the case law and also reinforces the Court's sense that an "appearance" and a "proceeding" need not be the same event.  To hold otherwise would mean that the Court could rewrite the phrase in

15

Section 3142(i)(4) as "appearance in connection with an appearance" or "proceeding in connection with a proceeding." That rewriting would render the phrase "in connection with" superfluous, an outcome that the Court prefers to avoid. *Cf. Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 99 (2d Cir. 2009) (interpreting the phrase "in connection with" in a labor statute to avoid "an obvious tension" with definitions found elsewhere in the statute).

The only other factor that the Court has to consider when interpreting the phrase "in connection with" is timing. Unless Rodriguez had other business to conduct at the courthouse, any directed transport would have something to do with the present case. Without any consideration of timing, Section 3142(i)(4) theoretically would authorize the court to bring Rodriguez to the courthouse any time at random or any time at counsel's request. Section 3142(i)(4) does not go that far. On its face, the provision ties any appearance to an event on the Court's calendar, which in turn means that an appearance at the courthouse needs to be close enough in time to a scheduled proceeding that any reasonable person aware of the appearance and the Court's calendar would understand that the appearance has something to do with the proceeding coming up. In another context, the Supreme Court has attached the same sort of temporality to the phrase "in connection with." *Cf. Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) ("Under our precedents, it is enough that the fraud

16

alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else. The requisite showing, in other words, is deception in connection with the purchase or sale of any security, not deception of an identifiable purchaser or seller.") (internal quotation marks and citations omitted). The way in which the Supreme Court used the word "coincide" in *Merrill Lynch* reinforces the Court's belief that the transports that it is contemplating could not occur months in advance of a proceeding, and probably not too many weeks in advance, either.

    Putting together all of the above analysis confirms that the Court has authority under Section 3142(i)(4) to offer limited assistance in further assuring Rodriguez a reasonable opportunity for private consultation with counsel under Section 3142(i)(3). Specifically, the Court has the authority under Section 3142(i)(4) to direct the transport of defendants to the courthouse a short time before a proceeding, for the purpose of allowing a face-to-face meeting between defendants and counsel to prepare for the proceeding in question. Any time limitation that the Court sets will be somewhat arbitrary, but two weeks seems to be a reasonable limitation without hyper-extending the meanings of the terms "coincide" and "in connection with." To avoid transports for proceedings that require minimal preparation and that can be covered through other means of communication, the Court will limit any Section 3142(i)(4) transports to preparation for substantive oral arguments and for evidentiary hearings. The

Court will not use Section 3142(i)(4) for plea considerations, since Rule 11 of the Federal Rules of Criminal Procedure prohibits the Court from participating in plea negotiations. *See* Fed. R. Crim. P. 11(c)(1) ("An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions."). Finally, the Court has to caution counsel about the finality of any transport arrangements for Rodriguez. Without tabulating any statistics, the Court knows generally from its experience that counsel in criminal cases frequently adjourn oral arguments and evidentiary hearings. The requests for adjournment often come the day before the proceeding in question. The Court will not allow counsel to overtax the USMS by arranging transports and then bailing on them at the last minute, leaving the USMS to waste time and energy on a transport that did not lead to a meeting with counsel. When counsel seek a Section 3142(i)(4) transport to see Rodriguez before a substantive oral argument or evidentiary hearing, they will have to file a motion for an appropriate Court order. Counsel will have to decide in advance that, barring extraordinary circumstances, they will not seek to move the proceeding in question any further. Counsel can file the motion anytime, but the transport itself will have to occur within two weeks of the proceeding in question. If the Court grants the motion and directs a transport then it will adopt a "use it or lose it" approach to that

transport.  Counsel will simply have to adjust their calendars as needed to make sure that a meeting with Rodriguez occurs on the day of the scheduled transport.  The transport itself will occur in the ordinary manner in which they occur when the Government submits an Order to Produce to the USMS, which, from the Court's experience, usually means that Rodriguez would be in the courthouse for the day.

     To the extent that the system for Section 3142(i)(4) transports sketched above is a novel approach to the problem of remote detention, the Court is granting Rodriguez's motion in part.  The Court anticipates that counsel will work diligently to make this novel approach a success.  The Court will go no farther, though, to resolve Rodriguez's motion.  Rodriguez currently is housed within the District, and the Court expects counsel to use a combination of Section 3142(i)(4) transports, jail visits, telephone conferences, and mailings to ensure that Rodriguez has a reasonable opportunity for private consultation under Section 3142(i)(3).

**III. CONCLUSION**

  For all of the foregoing reasons, the Court grants Rodriguez's motion (Dkt. No. 172) in part to allow limited Section 3142(i)(4) transports as explained above. The Court denies Rodriguez's motion in all other respects.

  SO ORDERED.

                __/s Hugh B. Scott_____
                HONORABLE HUGH B. SCOTT
                UNITED STATES MAGISTRATE JUDGE

DATED: March 12, 2015